IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
**WASHINGTON METROPOLITAN**                 )
**AREA TRANSIT AUTHORITY**                  )
    **600 Fifth Street, NW**             )
    **Washington, D.C. 20001**          )
                                            )
        **Plaintiff,**                   )
  **v.**                                    )    **Case No. 1:21-cv-00384**
                                            )
**AMALGAMATED TRANSIT UNION**               )
**AFL-CIO, LOCAL 689**                      )
    **2701 Whitney Place**              )
    **Forestville, MD 20747**           )
                                            )
        **Defendant.**                   )
_____)

## COMPLAINT TO CONFIRM AND ENFORCE ARBITRATION AWARD

Plaintiff, Washington Metropolitan Area Transit Authority ("WMATA" or "Authority"), by and through undersigned counsel, as for its Complaint against Defendant, Amalgamated Transit Union, AFL-CIO, Local 689, ("Defendant", "Union" or "Local 689"), states as follows:

### Introduction

1. This is an action to confirm and enforce a portion of a final and binding arbitration award issued on August 14, 2018. WMATA further seeks to enjoin breach of the collective bargaining agreement and the WMATA Compact, and to enjoin further prosecution of the matters determined in the August 14, 2018, arbitration award.

### Parties

2. WMATA is an interstate-compact agency and instrumentality of the District of Columbia, the State of Maryland, and the Commonwealth of Virginia. WMATA was created by interstate Compact approved by Congress and codified at D.C. Code § 9-1107.01; Md. Code, Transportation, § 10-204; and Va. Code §§ 56-529 to 56-530 (the "Compact"). A true and correct

copy of the Compact is attached to this Complaint as **Exhibit 1** and is incorporated into this Complaint by reference. WMATA operates a public transportation system in the District of Columbia, Maryland, and Virginia. WMATA's headquarters are located at 600 5th Street, NW, Washington, DC 20001.

3. WMATA employs 9,000 non-managerial, non-supervisory staff, operators, mechanics, maintenance personnel and clerical personnel represented by Defendant Local 689. Local 689 is a voluntary, unincorporated association commonly known as a labor "union" in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning the grievances, labor disputes, wages, rates of pay, hours of employment, and conditions of work of its employee-members or the employee-members of its constituent affiliated organizations. The Union, through its duly authorized officers and agents, has been engaged within the jurisdiction of this Court in representing and acting for and on behalf of its employee-members. Amalgamated Transit Union, AFL-CIO, Local 689 maintains an office and place of business at 2701 Whitney Place, Forestville, Maryland 20747.

## Jurisdiction and Venue

4. The Court has subject matter jurisdiction pursuant to Section 81 of the Compact. United States District Courts have original jurisdiction of all actions brought by or against WMATA pursuant to Section 81 of the Compact (Pub. L. 89-774).

(a) Congress established the Compact and the terms of the Compact and granted consent and approval to the District of Columbia, Maryland, and Virginia to enter into the Compact "related to the regulation of mass transit in the Washington, District of Columbia metropolitan area, and for other purposes." Since the Compact's enactment in 1960, Congress has modified it several times, and has granted consent and approval to the District of Columbia,

Maryland, and Virginia for modifications: Nov. 6, 1966, 80 Stat. 1324, Pub. L. 89-774, § 1; July 13, 1972, 86 Stat. 466, Pub. L. 92-349, title III, § 301; Oct. 21, 1972, 86 Stat. 1000, Pub. L. 92-517, title I, § 101; June 4, 1976, 90 Stat. 672, Pub. L. 94-306, § 1 (1)-(4).

(b) "Since the Compact is an interstate agreement which requires the consent of Congress, such Congressional consent transforms the Compact into an agreement pursuant to federal law . . . . [I]nterpretation of the terms and conditions of the Compact is, therefore, governed by federal law." *Pievsky v. Ridge*, 98 F.3d 730, 733 (3d Cir. 1996) (citations omitted). *See Petty v. Tennessee-Missouri Bridge Comm'n*, 359 U.S. 275, 278 & n.4 (1959) ("The construction of a compact sanctioned by Congress under Art. I, s 10, cl. 3, of the Constitution presents a federal question . . . . Moreover, the meaning of a compact is a question on which this Court has the final say . . . . That is true even though the matter in dispute concerns a question of state law on which the courts or other agencies of the State have spoken.").

(c) The legal rights, obligations and responsibilities of the Authority and the Union with regard to collective bargaining and resort to binding arbitration are specified in the WMATA Compact. Ex. 2, Section 102(b).

(d) In Section 66(c) of the Compact, Congress granted WMATA the authority and ability and established WMATA's obligation to arbitrate labor disputes with its employees, and Congress established the arbitration rights and obligations of, and limitations on, WMATA, its employees, and Local 689 as their representative, in arbitration.

5. Accordingly, the court has federal question jurisdiction.

6. Venue is proper in this court pursuant to Section 81 of the WMATA Compact and 28 U.S.C. § 1391(b)(2). A substantial part of the events giving rise to this Complaint occurred in the District of Columbia.

**Facts Giving Rise to the Claim for Relief**

7. In Section 66(b) of the Compact, Congress authorized WMATA to enter into written contracts with employees through accredited representatives of the employees, or through representatives of any labor organization authorized to act for the employees. Pursuant to, and exercising their rights and authorizations under, Section 66(b) of the Compact, the parties entered into a collective bargaining agreement effective from July 1, 2016 through June 30, 2020. A true and correct copy of the Collective Bargaining Agreement ("CBA") is attached to this Complaint as **Exhibit 2** and is incorporated into this Complaint by reference. Pursuant to the Compact and the CBA, the terms of the CBA remain in effect until the parties negotiate a new agreement or, if arbitration is invoked, an award is rendered. Ex. 1, Section 66; Ex. 2, Section 601.

8. Section 66(c) of the WMATA Compact requires all labor disputes to be submitted to the grievance process and, if not resolved, submitted to arbitration. Accordingly, the parties' CBA establishes a grievance–arbitration procedure for resolving labor disputes.

9. Under Section 601 of the CBA, following notice and the opportunity to bargain over new or modified terms for a new CBA, if the parties reach impasse on proposed changes or modifications to the CBA, those areas of disagreement are to be resolved by arbitration. Ex. 2, Section 601. However, this can take place only after the CBA has been opened for renegotiation and the parties have failed to reach agreement on the matter. Ex. 2, Section 601.

10. In 2018, during the parties' efforts to construct a successor labor agreement to the contract that expired in 2016, the parties reached an impasse on certain issues, including differing proposals regarding cost-sharing mechanisms and contributions for retiree healthcare.

11. The parties submitted the outstanding issues for binding resolution before a three-person Board of Arbitration, pursuant the Compact and the CBA.

12. The Board, comprised of Neutral Chairman Richard I. Bloch, Authority-Appointed Member Jonathan C. Fritts, and Union-Appointed Member Thomas R. Roth, convened for eleven days of hearings in February, March, and April of 2018.

13. During that hearing, the parties presented witnesses and documents to support their respective proposals. As relevant here, WMATA proposed terms with respect to retiree healthcare and the cost of coverage. On August 14, 2018, the Board issued its Opinion and Award in the matter. A true and correct copy of the Award is attached to this Complaint as **Exhibit 3** and is incorporated into this Complaint by reference ("Bloch Award").

14. The Bloch Award established a new retiree healthcare cost-sharing arrangement derived from the language submitted in WMATA's proposal. Specifically, the Bloch Award determined:

> Effective January 1, 2019, contributions for individuals who are eligible for retiree healthcare coverage shall be modified as follows:
>
> - Pre-Medicare: increase from approximately 17 percent to 20 percent of the cost of coverage.
> - Post-Medicare: Increase from approximately 17 percent to 20 percent of the cost of the lowest cost Medicare Advantage Plan with Part D. Retirees who enroll in a higher-post Medicare option shall be required to pay the full amount of and difference in premium.
> - The forgoing increases shall be applicable only to employees who retire on or after January 1, 2019.

Ex. 3 at 21.

15. Thereafter, the Bloch Award determinations, including the retiree healthcare cost-sharing arrangement, were incorporated into the parties' 2018-2020 CBA, which was signed in May 2019. See Ex. 2.

16. WMATA contends that the Bloch Award, including the retiree healthcare cost-sharing mandate established by the award, speaks for itself. WMATA intends to comply with the Award and adjust its plan contributions accordingly.

17. Local 689, however, disagrees with the Bloch Award with respect to the provision on retiree healthcare cost-sharing. On October 9, 2020, Local 689, sought to proceed with a second arbitration to address the question. Subsequent to the invocation, Local 689 submitted a memorandum outlining its position on the issue. A copy of the memorandum, dated November 5, 2020, is attached hereto as Exhibit 4. Specifically, the Union stated as follows:

> The issue seems to be clear. For those who retire after January 1, 2019, WMATA must pay 80% of the retiree's health care premium. For those who have a Medicare Advantage Option, the payment will be limited to 80% of the lowest cost medicare advantage option with Part D which may be available to them, with the balance to be paid by the retiree. This term was set by the Bloch Interest Arbitration Award, granting in large measure a WMATA proposal. However, WMATA asserts that its contribution is limited to 80% of the amount charged by the local Kaiser Plan, regardless of whether the retiree can opt into that plan. Many retirees live in geographical areas where the Kaiser Plan is not available, and the lowest effective premium rates for them may be higher than that charged by Kaiser, or no Medicare Advantage Option is available at all, leaving them as member of the standard Plan PPO. The Union and its Trustees urge that in such cases WMATA must pay higher dollar amounts to the Fund.

Ex. 4.

18. Local 689 further seeks to change that section of the Bloch Award related to the retiree healthcare cost-sharing to reflect its position on the issue. Specifically, the November 5, 2020 memorandum provides, "I believe that the award as written requires WMATA to pay 80% of the cost of a recent retiree's health care, limited to the lowest-cost option which includes Part D *only if that option is available to a particular retiree.*" Ex. 4 (emphasis added). The last clause of the cited sentence in the memorandum reflects the change that Local 689 wishes to make with respect to the Bloch Award.

19. Subsequent to the issuance of the Bloch Award, the Union and WMATA negotiated a successor collective bargaining agreement to the 2018-2020 CBA. A copy of the memorandum of understanding reflecting the terms of the successor collective bargaining agreement with a term of July 1, 2020 through June 30, 2024, and dated December 11, 2019, is attached hereto as Exhibit 5 ("2019 MOU").

20. In their 2019 MOU, the Union and WMATA did not change the retiree healthcare cost-sharing mandate established by the Bloch Award, leaving it to carry over to the new collective bargaining agreement covering the period of July 1, 2020 through June 30, 2024.

21. At no time during the period in which the Union and WMATA were in negotiations leading up to the 2019 MOU, or after those negotiations had concluded in an agreement, did the Union pursue an interest arbitration over the retiree healthcare cost-sharing mandate of the Bloch Award in accordance with the provisions of Section 601 of the CBA.

22. At no time after the issuance of the Bloch Award did the Union file a Motion to Correct or to Vacate the Bloch award. In addition, any such Motion would now be untimely, leaving the Bloch Award's determinations to be final and binding on the parties.

23. Through its invocation of a grievance or question arbitration to add language to the Bloch Award, the Union is now seeking to modify the Bloch Award through a second arbitration without first having complied with the provisions of Section 601 of the CBA and raising the issue during negotiations for a successor collective bargaining agreement.

24. As such, the retiree healthcare cost-sharing mandate established by the Bloch Award should be confirmed and enforced.

**Causes of Action**

**COUNT I – CONFIRMATION OF ARBITRATION AWARD**

25.     WMATA incorporates by reference as if set forth full herein all facts and allegations contained in Paragraph 1-24 of the Complaint.

26.     WMATA seeks to confirm and enforce the retiree healthcare cost-sharing mandate established by the Bloch Award, issued on August 14, 2018.

27.     Confirmation of an arbitration award is mandatory under certain circumstances:

> After a party to an arbitration proceeding receives notice of an award, the party may make a motion to the court for an order confirming the award at which time the court shall issue a confirming order unless the award is modified or corrected pursuant to § 16-4420 or 16-4424 or is vacated pursuant to § 16-4423.

 D.C. Code Section 16-4422 (see also 9 U.S.C. Section 9)

28.     Since the award has not been modified, corrected, or vacated, and the time has elapsed for any such motion to be filed, and the Bloch Award must be confirmed and enforced.

**COUNT II – VIOLATION OF THE WMATA COMPACT**

29.     WMATA incorporates by reference as if set forth full herein all facts and allegations contained in Paragraph 1-28 of the Complaint.

30.     Defendant Local 689 and its officials are governed by and obliged to implement the provisions of the Compact, including Section 66(c), which requires, *inter alia*, that "The determination of the majority of the board of arbitration, thus established shall be final and binding on all matters in dispute." D.C. Code Section 9-1107.01(66(c)

31.     Necessarily, if the decision of a "majority of the board of arbitration" is to be "final and binding" its directives must be honored and implemented.

32. By failing and refusing to comply with the clear directives from the Board of Arbitration's August 14, 2018, Award, Local 689 has violated and continues to violate the express terms of the WMATA Compact.

**COUNT III – VIOLATION OF THE COLLECTIVE BARGAINING AGREEMENT**

33. WMATA incorporates by reference as if set forth full herein all facts and allegations contained in Paragraph 1-32 of the Complaint.

34. Section 601 of the Collective Bargaining Agreement states:

This Agreement is to continue in effect through June 30, 2020, and from year to year thereafter unless change is requested by either of the parties hereto by written notice ninety (90) calendar days prior to June 30, 2020, or ninety (90) calendar days prior to June 30 of any year thereafter. In the event the parties cannot reach agreement upon proposed changes or modifications, or in the event of a notice of termination if collective bargaining fails to result in agreement, then all matters in dispute shall be arbitrated as provided in the provisions of this Agreement dealing with the arbitration of future contracts.

35. The parties are not permitted to modify the terms of the CBA through arbitration unless and until the CBA has been opened for renegotiation and negotiations on the specific terms have proven to be unsuccessful. See Ex. 2, Sections 106 and 601. By ignoring these contractual requirements and attempting to bring about changes to the retiree healthcare cost-sharing mandate established by the Bloch Award through subsequent arbitration without first going through the procedures outlined in Section 601 of the CBA, the Union is in clear violation of the parties' CBA and must be enjoined from doing so.

36. Furthermore, WMATA cannot be compelled to arbitrate over the retiree healthcare cost-sharing mandate established by the Bloch Award because the Bloch Award is final and binding and should be enforced. The arbitration being pursued by the Union here is an attempt to modify the Bloch Award through arbitration not because the award is ambiguous, but because the

Union believes it to be unfair. Accordingly, Local 689 must be enjoined from further arbitration on this final and binding award. See Ex. 2, Sections 102(b), 105 and 106.

**WHEREFORE**, WMATA prays judgment against Defendant and respectfully requests that the Court provide the following relief:

(a) confirm and enforce the Bloch Award, dated August 14, 2018, between Local 689 and Washington Metropolitan Area Transit Authority

(b) declare that the claims asserted by Local 689 in the arbitration invoked to modify the retiree healthcare cost-sharing mandate established by the Bloch Award, are not arbitrable and are therefore enjoined from proceeding.

(c) award WMATA its reasonable attorneys' fees and costs associated with this action to enforce Local 689's obligations; and

(d) provide any further or different relief as this Court deems proper and just.

Dated: February 11, 2021               Respectfully submitted,

                                       */s/ Ethan D. Balsam*
                                       Stefan J. Marculewicz, (D.C. Bar 100268)
                                       Ethan Balsam (D.C. Bar 975239)
                                       LITTLER MENDELSON, P.C.
                                       815 Connecticut Avenue, NW, 4th Floor
                                       Washington, D.C. 20006
                                       Tel. (202) 842-3400
                                       Fax. (202) 842-0011
                                       SMarculewicz@littler.com
                                       EBalsam@littler.com

                                       *Attorneys for Plaintiff WMATA*